**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 18-CV-22265-DPG**

**CLASS ACTION**

MSP RECOVERY CLAIMS, SERIES LLC,
a Delaware entity,

       Plaintiff,

v.

MGA INSURANCE COMPANY, INC.,

       Defendant.
_____/

**PLAINTIFF'S SECOND AMENDED**
**CLASS ACTION COMPLAINT FOR DAMAGES**

## <u>TABLE OF CONTENTS</u>

**NATURE OF THE ACTION** ........................................................................................... 3

**PLAINTIFF'S CLASS REPRESENTATIVE CLAIM** ........................................... 5

*The G.M. claim demonstrates Health First Health Plans, Inc. ("HFHP") suffered an injury in fact* .......................................................................................................... 5

**JURISDICTION AND VENUE** .................................................................................... 12

**BACKGROUND** ............................................................................................................... 13

Medicare Advantage Organizations ........................................................................ 13

**THE PARTIES** .................................................................................................................. 20

**CLASS DEFINITION** ..................................................................................................... 21

**CLASS ALLEGATIONS** ................................................................................................. 21

Numerosity ............................................................................................................... 22

Commonality ............................................................................................................. 22

Typicality .................................................................................................................. 24

Adequacy of Representation ..................................................................................... 25

**CAUSE OF ACTION** ...................................................................................................... 27

**Count I** ............................................................................................................................... 27

Direct Right of Recovery Pursuant to 42 C.F.R. § 411.24(e) for Breach of Contract ....... 27

**JURY TRIAL DEMAND** ................................................................................................. 28

**PRAYER FOR RELIEF** ................................................................................................. 28

Plaintiff, MSP Recovery Claims, Series LLC, a Delaware entity ("Plaintiff"), on behalf of itself and all others similarly situated, brings this action against MGA Insurance Company, Inc., a foreign profit corporation ("MGA" or "Defendant"), and states as follows:

## NATURE OF THE ACTION

1.      This is a class action lawsuit arising from Defendant's systematic and uniform failure to reimburse Medicare Advantage Organizations ("MAOs") and their assigns, which include first-tier and downstream entities (collectively "Medicare Payers"), for payments they made on behalf of Part C Medicare beneficiaries ("Enrollees") for medical expenses resulting from injuries sustained in automobile accidents ("accident-related medical expenses"). Defendant is a no-fault insurer that issues no-fault insurance policies to Medicare beneficiaries throughout Florida, as required by law. Congress implemented the Medicare Secondary Payer Act, codified at 42 U.S.C. § 1395y, otherwise known as the Medicare Secondary Payer ("MSP") Act or the MSP Law, to require primary payers, such as Defendant, to pay for accident-related medical expenses *first.* Medicare and Medicare Payers are supposed to pay *second*, if at all. Congress mandated this order of payments to reign in skyrocketing Medicare cost that threatened to imperil the Medicare program.[1]

2.      Despite passage of the Act, Medicare and Medicare Payers frequently pay first so that Medicare beneficiaries receive prompt medical care to treat their accident-related injuries. Those payments are called "conditional" payments under the Act. Anytime Medicare or a

---

[1] *Michigan Spine & Brain Surgeons, PLLC v. State Farm Mut. Auto. Ins. Co.*, 758 F.3d 787, 793 (6th Cir. 2014) ("It is well-established that in passing the Medicare Secondary Payer Act and in providing for a private cause of action, Congress intended to 'curb skyrocketing health costs and preserve the fiscal integrity of the Medicare system.'").

Medicare Payer "makes a payment that a primary plan was responsible for, the payment is merely conditional" by operation of law. *Fanning v. United States*, 346 F.3d 386, 389 (3d Cir. 2003). The "condition" of the payment is that the primary payer is required by the Act to timely reimburse Medicare or the Medicare Payer.

3.      However, non-compliance is widespread and well-documented. For years, primary payers, including no-fault insurers, have ignored their repayment obligations, while enjoying significant cost savings. Plaintiff attaches as **Exhibit A *more than 288*** instances where Defendant admitted primary payers responsibility but may not have reimbursed Medicare Payers.[2]

4.      To counteract non-compliance, Congress created in the Act a private right of action to be used by Medicare Payers against recalcitrant primary payers, like Defendant. The primary payer's liability and responsibility to pay is established as a matter of law by having in place an insurance contract with a Medicare beneficiary that required the primary payer to cover accident-related medical expenses and to pay first.

5.      Plaintiff brings this lawsuit against Defendant on behalf of itself and all other similarly-situated entities (the "Class Members" or "Class"). Plaintiff is a company that has obtained assignments from Medicare Payers to recover conditional payments that Defendant has failed to reimburse (the assigning Medicare Payers are referred to collectively as the "Assignors"). As alleged here, both the Assignors and the Class Members made conditional payments on behalf of, or otherwise became financially responsible for, an Enrollee's accident-related medical

---

[2] As explained below, this instance is only representative of the claims data in the possession of Plaintiff and is only a small subset of the entire universe of conditional payments Defendant potentially failed to reimburse to the Class Members. Limited discovery will reveal the true extent of Defendant's non-compliance with the MSP Act.

expenses. Despite being responsible to pay for those expenses, Defendant failed to reimburse the Assignors and the Class Members as required by the Act. The Assignors have transferred title and ownership of their claims under the Act and under state law.

6.      On behalf of itself and the Class, Plaintiff seeks reimbursement for all sums, on a fee-for-service basis, that Plaintiff's Assignors and Class Members were billed for medical care and treatment rendered to the Enrollees within the applicable limitations period, for which Defendant was responsible as a primary payer. This lawsuit vindicates the interests of Congress, Medicare, and the American people, because when Medicare Payers recover conditional payments they "spend less on providing coverage for their enrollees" and the "Medicare Trusts Fund…achieve[s] costs savings." *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 685 F.3d 353, 365 (3d Cir. 2012).

**PLAINTIFF'S CLASS REPRESENTATIVE CLAIM**
**RELATING TO MEDICARE PART C BENEFICIARIES**

7.      Plaintiff is the class representative of a class that consists of MAOs and their assignees. Accordingly, Plaintiff sets forth below an example of Defendant's systematic and uniform failure to fulfill its statutory duties as a "no-fault" insurer. In this example, Plaintiff describes Defendant's failure to reimburse conditional payments and how that failure caused an injury in fact to an MAO, which subsequently assigned its recovery rights to Plaintiff.

***The G.M. claim demonstrates Health First Health Plans, Inc. ("HFHP") suffered an injury in fact.***

8.      On February 5, 2010, G.M. was enrolled in a Medicare Advantage plan issued by HFHP, an MAO.

9.      On February 5, 2010, G.M. was injured in an automobile accident in Florida. At

the time of the accident, G.M. was also covered under a no-fault policy issued by Defendant. As a direct result of the accident, G.M. sustained injuries which include but are not limited to the following:

    a.  723.1 - Cervicalgia;

    b.  E819.9 - Motor vehicle traffic accident of unspecified nature inuring unspecified person;

    c.  724.5 - Backache, unspecified;

    d.  E812.0 - Other motor vehicle traffic accident involving collision with motor vehicle injuring driver of motor vehicle other than motorcycle;

    e.  722.2 - Displacement of interverterbral disc, site unspecified, without myelopathy;

    f.  724.2 - Lumbago;

    g.  847.0 - Sprain of neck;

    h.  959.19 - Other injury of other sites of trunk, etc.

A list of the diagnosis codes and injuries assigned to G.M. in connection with G.M.'s accident-related treatment is attached hereto as **Exhibit A**.

    10.    As a direct and proximate result of the accident and the injuries detailed above, G.M. required medical items and services. Those medical items and services include but are not limited to:

    a.  72125 Ct neck spine w/o dye [A];

    b.  76377 3d render w/intrp postproces [A];

    c.  72128 Ct chest spine w/o dye [A];

    d.  99284 Emergency dept visit [A];

     e.   64483 Inj foramen epidural 1/s [A];

     f.   72275 Epidurography [A];

     g.   A4550 Surgical trays [B];

     h.   Q9966 Locm 200-299mg/ml iodine, 1ml [E];

     i.   99070 Special supplies phys/qhp [B];

     j.   J2001 Lidocaine injection [E], etc.

An account of the items and services provided to G.M. as a result of the accident are included within **Exhibit A**. The medical services were rendered by multiple providers, including Brevard County Fire Rescue, between February 5, 2010 and June 2, 2010.

     11.    The medical providers subsequently issued bills for payment of the accident-related medical expenses to G.M.'s MAO, HFHP. HFHP paid $968.01 for G.M.'s accident-related medical expenses. While Plaintiff alleges the amount paid solely for purposes of completeness, the medical provider actually billed and charged HFHP $3,401.90 for G.M.'s accident-related medical expenses. The amount of damages recoverable for breach of contract is what an MAO was charged, not what it ultimately paid.

     12.    Defendant is liable to pay this amount because it was G.M.'s primary payer by virtue of a no-fault insurance policy which provided primary coverage for G.M.'s accident-related medical costs and expenses.  In fact, Defendant reported and admitted to the Centers for Medicare & Medicaid Services ("CMS") that it was the primary payer for G.M.[3] Further, Defendant even

---

[3] Plaintiff has identified at least 288 instances where Defendant admitted it was to provide primary payment on behalf of Enrollees.  A list of such instances is attached hereto as **Exhibit B**.

reported information regarding the accident, the name of the reporting entity, and the type of insurance policy involved. This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse HFHP.  A true and correct copy of Defendant's report to CMS is attached hereto as **Exhibit C**.[4]  Despite Defendant's reporting that it was a primary payer, and the corresponding admission that it should have paid for G.M.'s accident-related injuries, Defendant failed to do so.

13.     Plaintiff has the legal right to pursue this MSP Act claim pursuant to a series of valid assignment agreements.

14.     On April 28, 2016, HFHP, through its administrator Health First Administrative Plans, Inc. ("HFAP"), irrevocably assigned all rights to recover conditional payments made on behalf of its Enrollees to MSP Recovery, LLC ("HFAP Recovery Agreement"). HFHP's assignment is evidenced by:

a.      The HFAP Recovery Agreement dated April 28, 2016, executed by Michael Keeler, as Chief Operating Officer of both HFHP and HFAP. A true and correct copy of the HFAP Recovery Agreement is attached hereto as **Exhibit D.**

b.      The Affidavit of Michael Keeler, which is attached hereto as **Exhibit E** and which states that, at all relevant times, HFHP intended to and did assign the Assigned Claims to MSP Recovery, LLC on April 28, 2016.

c.      The supplemental Affidavit of Michael Keeler, dated June 1, 2018, which is attached hereto as **Exhibit F**, and which affirms (1) that HFAP and HFHP

---

[4] Plaintiff obtained this reporting data from a vendor called MyAbility. MyAbility is one of 16 CMS-authorized vendors that allow companies, such as Plaintiff, to access data that primary payers report to CMS, in compliance with their statutory reporting obligations. To be clear, the reporting data attached to this Complaint is taken directly from the data that CMS stores, which is inputted by the Defendant, not the Plaintiff. Accordingly, any inaccuracies or lack of specificity in the reporting data would be attributable to the manner in which Defendant chose to report.

intended the HFAP Recovery Agreement "to irrevocably assign the Medicare Secondary Payer recovery rights of HFHP to MSP Recovery, LLC and authorize the transfer of HFHP's claims data to MSP Recovery for analysis and use in furtherance of that end;" and (2) that HFAP performs all administrative functions for, and on behalf of, HFHP and has the authority to enter into agreements transferring the recovery rights of HFHP, including the recovery rights at issue in this lawsuit.

    d.    The Assignment, *nunc pro tunc*, executed by Michael Keeler on June 1, 2018 (the "Nunc Pro Tunc Assignment"), a copy of which is included in Exhibit F.

    e.    The Addendum to the Recovery Agreement and Assignment Addendum between HFAP and MSP Recovery, LLC, dated June 1, 2018 and executed by Michael Keeler (the "Addendum"). A copy of the Addendum is likewise included in Exhibit F.

15.    The HFAP Recovery Agreement expressly provides:

Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and all of its successors and assigns, and all of Client's right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for Client that Client had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "Assigned Claims"… The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest, and entitlements in and to the Assigned Claims shall remain the confidential exclusive property of MSP recovery or its assigns. This assignment is irrevocable and absolute.

**[Ex. D**, § 4.1, *HFAP Recovery Agreement*].

16.    To be clear, all administrative functions and operations of HFHP, including the issuance of conditional payments, are accomplished by HFAP. Because HFHP generally acts through HFAP for all administrative functions – including entering into contracts – the HFAP Recovery Agreement was executed by HFAP, on behalf of "all affiliated health plans…and Medicare Advantage Organizations having direct contracts with CMS," which includes HFHP.

Ex. D, *HFAP Recovery Agreement*, § 2.2.

17.    The Nunc Pro Tunc Assignment confirms, ratifies, and memorializes HFHP's irrevocable assignment of the Assigned Claims, as defined in the HFAP Recovery Agreement, as of April 28, 2016.  *See* **Ex. F** at 2.

18.    Pursuant to the HFAP Recovery Agreement, and consistent with the Nunc Pro Tunc Assignment, HFHP irrevocably transferred and delivered all claims data for dates of service between February 2007 and December 2016 to MSP Recovery, LLC on June 8, 2016.  The claims data transferred and delivered to MSP Recovery, LLC by HFHP constituted the Assigned Claims.

19.    Thereafter, on June 12, 2017, MSP Recovery, LLC assigned all rights acquired under the HFAP Recovery Agreement, as confirmed by the Nunc Pro Tunc Assignment and Addendum, to Plaintiff, under one of its designated series: Series 16-05-456 LLC (the "Series Assignment").  The Series Assignment from MSP Recovery, LLC to Plaintiff's Series 16-05-456 LLC is attached hereto as **Exhibit G** and states:

> [E]ach undersigned Assignor… irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the Recovery Agreement dated [MONTH, DAY, YEAR] by and among [NAME OF HEALTH PLAN], a Florida corporation (the "Client"), and MSP Recovery, LLC, a Florida limited liability company (the "Agreement").

**Ex. G**, at 1. All conditions precedent to the HFAP Recovery Agreement have been satisfied or waived, including any requirement for the approval of any assignments, to the extent such approval was required for the assignment from MSP Recovery to MSPRC, which was ministerial in nature.

20.    Although not required by the MSP Act, the governing regulations, or interpretive

case law, Plaintiff, on August 22, 2017, issued a demand letter to Defendant, which provided Defendant access to the foregoing information regarding the G.M. claim and sought additional information related to reimbursements owed by Defendant to Plaintiff's assignors (the "411.25 Letter"). Defendant was required to provide the requested information pursuant to 42 C.F.R. § 411.25, but has failed to do so.  A true and correct copy of Plaintiff's 411.25 Letter to Defendant is attached hereto as **Exhibit H**.

<u>**Additional Allegations to the Representative Claim**</u>

21.     Full details regarding the foregoing representative claim, i.e., specific payments, coverage determinations, etc., are in Defendant's possession and will be located and assessed through the process of discovery.  However, the allegations set forth herein plainly demonstrate that Plaintiff's assignors suffered damages as a direct result of Defendant's individual failures to reimburse conditional payments as required under the MSP law.

22.     In addition, Section 1395y(a)(1)(A) of the Medicare statute states that, "no payment may be made under Medicare Statute for any expenses incurred for items or services which . . . are not reasonable and necessary for the diagnosis or treatment of illness or injury."

23.     Because this Section contains an express condition of payment – that is, "no payment may be made" – it explicitly links each Medicare payment to the requirement that the particular item or service be "reasonable and necessary."

24.     Once an MAO makes a payment for medical items and services on behalf of its Enrollees, the payment is conclusive proof that the items and services were reasonable and necessary.

25.     The items and services received by and paid on behalf of the Enrollees, including

G.M., were reasonable and necessary.

26.     All purported conditions precedent to the filing of this lawsuit have occurred, been performed, or have been otherwise waived by Defendant.

27.     Pursuant to Plaintiff's limited liability agreement and Delaware law, all rights arising from the assignment to its series, along with the right to bring any lawsuit in connection with said assignment, belongs to Plaintiff. Therefore, Plaintiff may pursue HFHP's rights to recover reimbursement of Medicare payments that should have been paid, in the first instance, by Defendant.

## JURISDICTION AND VENUE[5]

28.     This is an action for damages that exceeds $15,000, exclusive of interest, attorneys' fees, and costs.

29.     Venue is proper in this Court under Fla. Stat. § 47.051 because Plaintiff's Assignors made conditional payments for the medical expenses of numerous Enrollees who reside or resided in Miami-Dade County, Florida, or as a result of accidents that occurred, or treatment that was provided, in Miami-Dade County, Florida.

30.     Defendant is an insurer doing business in the State of Florida. In the ordinary course of its business, Defendant issues no-fault insurance policies in Florida that provide personal injury protection ("PIP") benefits, as well as medical and extended medical-expense coverage, that must comply with Fla. Stat. §§ 627.730-627.7405. This class action arises from that ongoing and regular business activity of Defendant in Florida over which personal jurisdiction exists under Fla. Stat. §

---

[5] On June 25, 2018, Plaintiff filed a Motion to Remand this action to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. [ECF No. 9].

48.193(1)(a)(1).

31.     All conditions precedent to this action have occurred, been performed, or have been

waived, including meeting any purported threshold amount to the applicable.

## **BACKGROUND**

32.     The MSP Law declares that Medicare or MAOs are "secondary payers" to all other

sources of coverage, and, consequently, MAOs that are injured as a result are empowered to recoup

from the rightful primary payer if Medicare or an MAO pays for a service that fell within

overlapping insurance coverage for a Medicare Part C beneficiary.

33.     Defendant is a primary plan under § 1395y(b)(2)(A) because it is a no-fault insurer.

*See* 42 U.S.C. § 1395y(b)(2)(A) (defining "primary plan" to include a group health plan or large

group health plan…a workmen's compensation law or plan, an automobile or liability insurance

policy or plan (including a self-insured plan) or no-fault insurance); 42 C.F.R. § 411.21 (same).

## I.     Medicare Advantage Organizations

34.     The Medicare Advantage program, otherwise known as Part C, was enacted in

1997.  Under the Medicare Advantage program, a private insurance company, operating as an

MAO, administers the provision of Medicare benefits pursuant to a contract with CMS.

35.     CMS pays the MAO a fixed fee per Enrollee and the MAO provides, at minimum,

the same benefits an Enrollee would receive under traditional Medicare.  MAOs are a private sector

analog to traditional Medicare and have the same rights to reimbursement from primary payers,

like the Defendant here.

## II.     The Medicare Payment Process

36.     An MAO must process and pay or deny claims promptly to comply with the specific

requirements established by federal law, federal regulations, and the terms of the its contract with CMS. Federal law requires Medicare and MAOs to pay within 30 days, 42 C.F.R. § 422.520(a), for only those medical expenses that are reasonable and necessary. 42 U.S.C. § 1395y(a)(1)(A).

### III.   CMS' Standard for Storing Digital Health Insurance Claims Data

37.     It is the custom and practice of CMS and primary plans to maintain records in a detailed electronic format.  According the U.S. Department of Health and Human Services (HHS), CMS, federal statutes, and industry best practices and guidelines, the standard format for storing digital health insurance claims data is an electronic data interchange ("EDI") format called 837P ("837").[6]

a.   The 837 standard is mandated by the Federal government and used federal and state payors such as Medicare and Medicaid.

b.   The 837 standard is also used by private insurers, hospital clinics, physicians and other health care providers (i.e., HIPAA covered entities) who typically adopt CMS standards.

c.   Paper claims are captured in the CMS 1500, UB04, and UB92 forms, but electronically, the standard for storing data is the 837 format.

38.     Essential components of an 837-claim file include but are not limited to the date(s) of service, diagnosis code(s) and medical procedure code(s).

a.   <u>Dates (including dates of service)</u>: the standard format for dates in electronic health

---

[6] Department of Health and Human Services, Centers for Medicare and Medicaid. Medicare Billing: 837P and Form CMS 1500 (2016), https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/Downloads/837P-CMS-1500.pdf.

care claims is YYYYMMDD, CCYYMMDD, or MM/DD/YYYY.

    i. According to industry best practices and guidelines, and to HHS and CMS, the standard format for expressing dates in healthcare insurance claims data is CCYYMMDD (CC representing two numeric digits to indicate Century, YY representing two numeric digits for year, MM representing two-digits for the month, DD representing two digits for the day of the month). Sometimes this is alternately expressed as YYYYMMDD.[7]

    ii. The CCYYMMDD date format standard has been in place for many years. *See* CMS Guidance for 2010[8], 2011[9], 2012[10], 2013[11],  2014[12], and 2016.[13]

---

[7] *See* the Medicare Claims Processing Manual Chapter 3 and CMS Manual System, Pub 100-08 Medicare Program Integrity, Transmittal 721.

[8] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 761 dated August 20, 2010, https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/r761otn.pdf.

[9] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 988 dated October 28, 2011, Business Requirements Table II, 7602.1 – Requirement, https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R988OTN.pdf.

[10] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 1050 dated February 29, 2012, https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/Downloads/R1050OTN-.pdf.

[11] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 1277 Medicare Physician Fee Schedule, dated August 9, 2013, https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R1277OTN.pdf.

[12] CMS Medicare Part D 2014 Guidance dated March 10, 2014, https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/Hospice/Downloads/Part-D-Payment-Hospice-Final-2014-Guidance.pdf.

[13] Medicare Plan Payment Group Enterprise Systems Solutions Group

    iii.   CMS has also accepted the MM/DD/YYYY format for its local coverage determination data.  *See* Local Coverage Determination ("LCD") Date of Service Criteria.[14]

    iv.   The purpose of the date format is to ensure that dates of health care claims such as the date a medical procedure was provided (date of service of "DOS") in comparison to the date of settlement, can be searched, sorted and properly selected as compensable or non-compensable claims.

    v.   In general, ensuring the accuracy of dates, and other data is essential to performing analysis on claims data files by health insurers and others who may need to determine the value of claims, the relevance of particular claims with respect to patient conditions and dates of care, or whether the claim is compensable.

b.  <u>Medical Diagnosis and Procedure Codes</u>:

    i.   Diagnosis-Related Group (DRG) – DRGs are a statistical system of classifying any inpatient stay into groups for the purposes of payment. The DRG classification system divides possible diagnoses into more than 20 major body systems and subdivides them into almost 500 groups for the

---

Software Release Announcement, https://www.cms.gov/Research-Statistics-Data-and-Systems/CMS-Information-Technology/mapdhelpdesk/Downloads/Announcement-of-the-February-2017-Software-Release.pdf.

[14] CMS.gov, Local Coverage Determination (LCD) Date of Service Criteria. https://www.cms.gov/medicare-coverage-database/search/lcd-date-search.aspx?DocID=L35093&bc=gAAAAAAAAAAAA.

purpose of Medicare reimbursement. Factors used to determine the DRG payment amount include the diagnosis involved as well as the hospital resources necessary to treat the condition.[1516]

ii. International Classification of Diseases (ICD-9 and ICD-10) The diagnosis information is reported by the hospital using codes from the ICD-9-CM (the International Classification of Diseases, 9th Edition, Clinical Modification if the date of services is before October 1, 2015), or ICD-10 CM if the date of services is on or after October 1, 2015

iii. Inpatient medical procedures ICD-9 Volume 2 and volume 3 and ICD-10 PCS. These codes are used to describe inpatient medical procedures, excluding the physician's bill.

iv. Current Procedural Terminology ("CPT") - CPT[17] codes are a standardized listing of descriptive terms and identifying codes for reporting outpatient medical services and procedures as well as both inpatient and outpatient

---

[15] Gillian I. Russell, Terminology, in FUNDAMENTALS OF HEALTH LAW 1, 12 (American Health Lawyers Association 5th ed., 2011).

[16] Beginning in 2007, CMS overhauled the DRG system with the development of "severity-adjusted DRGs." Specifically, beginning in October 2007, CMS began to replace DRGs with "Medicare-severity DRGs" or "MS-DRGs" through a three-year phase-in period that blended payment under the old DRG system and the MS-DRG system.  In a small number of MS-DRGs, classification is also based on the age, sex, and discharge status of the patient. The diagnosis and discharge information is reported by the hospital using codes from the ICD-9-CM or ICD-10 CM if the date of services is on or after October 1, 2015.

[17] CPT codes and descriptions are copyrights of the American Medical Association Current Procedural Terminology.

physician services. The current version, CPT-4 is maintained by the American Medical Association and is an accepted standard by the National Committee on Vital Statistics or NCVHS.[18]

    v.  Ambulatory Patient Classification (APC) - Services performed in outpatient ambulatory surgery centers may be classified by APCs. CMS assigns individual services to APCs based on similar clinical characteristics and similar costs.[19]

    vi.  Healthcare Common Procedure Coding System (HCPCS) - HCPCS is mainly used to indicate medical supplies, durable medical goods, ambulance services, and durable medical equipment, prosthetics, orthotics and supplies (DMEPOS).[20]

    vii.  The standard Code set for medical diagnosis and procedure codes in health care claims is a series of digits as specified in 45 C.F.R. 162.1002 - Medical data code sets.

---

[18] National Committee on Vital and Health Statistics, Consolidated Health Informatics Initiative, http://www.ncvhs.hhs.gov/meeting-calendar/agenda-of-the-december-9-10-2003-ncvhs-subcommittee-on-standards-and-security-hearing/consolidated-health-informatics-initiative-final-recommendation-information-sheet-billingfinancial-for-the-december-9-2003-ncvhs-subcommittee-on-standards-and-security-hearing/.

[19] CMS, Hospital Outpatient Prospective Payment System, Partial Hospitalization services furnished by hospitals or Community Mental Health Centers, Ambulatory Payment System, https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/downloads/HospitalOutpaysysfctsht.pdf.

[20] American Academy of Professional Coders (AAPC), https://www.aapc.com/resources/medical-coding/hcpcs.aspx.

    viii.   The purpose of standard diagnosis code sets is to use a universal terminology in describing patients with certain conditions to determine compensable or non-compensable claims.

    ix.   Specifically, CMS primarily utilizes two systems of classification: (1) the International Classification of Diseases ("ICD-9") medical diagnosis codes; and (2) Current Procedural Terminology ("CPT-4") procedure codes. *See* 45 C.F.R. 162.1002.

**IV.  Plaintiff's Use of EDI to Analyze Claims Data and Identify Reimbursement Claims Under the MSP Act.**

39.     Using a software system (the "MSP System"), designed and developed by Plaintiff, Plaintiff can capture, compile, synthesize, and funnel large amounts of data to identify claims class-wide. The MSP System captures data from different sources to identify the Class Member enrollees' medical expenses incurred as a result of an automobile accident and which should have been paid for by Defendant. The System can also identify the amounts owed, by using the Defendant's EDI, the MAO's data, and data acquired from outside sources, like the Department of Motor Vehicles, and CMS.

40.     Plaintiff merges the Defendant's data with the information available on the MSP System to discover and identify a Medicare eligible person for whom primary medical payments should have been made, along with any information stored as to potential class members.

41.     The MSP System utilizes ICD-9 or ICD-10 CM medical diagnosis codes and DRGs, ICD-9, ICD-10 PCS, HCPCS, or CPT procedure codes to identify and obtain any information regarding an Enrollee's claim, such as the type of injury suffered, the circumstances

that caused the injury, whether the listed primary insurance provider made payment, and whether the insurance carrier was a no-fault provider.

## THE PARTIES

42.     Plaintiff, MSP Recovery Claims, Series LLC, is a Delaware series limited liability company with a principal place of business located at 5000 S.W. 75th Avenue, Suite 400, Miami, Florida 33155. Plaintiff has established various specific Series wherein each specific Series is owned exclusively by MSP Recovery Claims, Series LLC. The specific Series have been designated with specific characteristics to identify the specific assignors assigning to Plaintiff.  All specific Series form a part of Plaintiff and are owned by Plaintiff. Plaintiff's limited liability company agreement provides for the establishment of one or more specific Series. The records maintained for such Series account for the assets associated with such specific Series. All records of all Series are maintained together with all assets of the limited liability company. The limited liability company agreement provides that there are no limitations on liabilities of any Series. Pursuant to its limited liability agreement and applicable amendment(s), Plaintiff owns and controls any and all Series interests and all claims rights transferred from any assignor and may allocate any assets, including assignments, to a Series. Plaintiff's limited liability agreement provides that any rights and benefits arising from assignments to its series shall belong to Plaintiff.

43.     Numerous assignors have assigned their recovery rights to assert the causes of action alleged in this Complaint to series LLCs of the Plaintiff, and Plaintiff maintains the legal right to sue on behalf of each of its designated series LLCs.  As such, Plaintiff has the right and authority to seek reimbursement of Medicare payments made by its assignors, which should have been paid, in the first instance, by Defendant.

44.    Defendant is an insurance company that is authorized to and presently conducts business in the State of Florida. In the ordinary course of its business, Defendant issues no-fault insurance policies in Florida that provide personal injury protection ("PIP") benefits, as well as medical and extended medical-expense coverage, that must comply with Fla. Stat. §§ 627.730-627.7405. This class action arises from that ongoing and regular business activity of Defendant in Florida over which personal jurisdiction exists under Fla. Stat. § 48.193(1)(a)(1).

## CLASS DEFINITION

45.    The putative class (hereinafter referred to as "Class Members") is defined as:

All Medicare Advantage Organizations, or their assignees, that provide benefits under Medicare Part C, in the United States of America and its territories, and that made payments for a Medicare beneficiary's medical items and services within the last six years from the filing of the complaint where Defendant:

(1) is the primary payer by virtue of having a contractual obligation to pay for the items and services that are required to be covered by the policy of insurance of the same Medicare Beneficiaries that are also covered by a Medicare Advantage plan; and

(2) failed to pay for the items and services or otherwise failed to reimburse Medicare Advantage Organizations, or their assignees, for the items and services that were provided for medical items and services related to the claims on behalf of the Medicare Beneficiaries;

This class definition excludes (a) Defendant, its officers, directors, management, employees, subsidiaries, and affiliates; and (b) any judges or justices involved in this action and any members of their immediate families.

## CLASS ALLEGATIONS

46.    Under Rule 1.220 of the Florida Rules of Civil Procedure, Plaintiff brings this suit on its own behalf and on behalf of all Class members or their assigns operating in Florida. Plaintiff seeks class certification of the claims alleged in this action, and judgment for damages against Defendant for itself and on behalf of the Class.

## I.     Fla. R. Civ. P. 1.220(a)

47.     Fla. R. Civ. P. 1.220(a) provides for class certification where the representative plaintiff demonstrates that:

    a.   the members of the class are so numerous that separate joinder of each member is impracticable;

    b.   the claim or defense of the representative party raises questions of law or fact common to the questions of law or fact raised by the claim or defense of each member of the class;

    c.   the claim or defense of the representative party is typical of the claim or defense of each member of the class; and

    d.   the representative party can fairly and adequately protect and represent the interests of each member of the class.

### (A)  Numerosity

48.      The Class consists of at least 37 Florida MAOs, First-Tier entities, Downstream entities, and their assignees and is so numerous that individual joinder of each Class Member is impracticable.

49.     On information and belief, all Class Members have Enrollees in their MA plans on whose behalf they made conditional payments for accident-related medical expenses for which Defendant was the primary payer, which Defendant failed to reimburse under the MSP Act, Florida law, and other applicable laws.

### (B)  Commonality

50.     Plaintiff and the Class have claims that raise common questions of law and fact.

51.     This is an action in which Plaintiff and the Class Members assert claims alleging the same theory of recovery – that is, they are entitled to reimbursement from Defendant for

conditional, accident-related medical expense payments, which they made on behalf of Enrollees who also were insured by auto insurance policies issued by Defendant.

52.     Like Plaintiff, each Class Member has the same rights to recover its conditional payments under applicable law, including the MSP Act.

53.     Plaintiff's and the Class Members' claims arise from the same practice or course of conduct. All of the claims arise from Defendant's routine and ongoing business practice of (a) failing to make primary payments for its insureds' accident-related medical expenses, where those insureds also are Enrollees in Medicare Payers, and (b) failing to reimburse Medicare Payers for their conditional payments made for those Enrollees' accident-related medical expenses.

54.     Plaintiff's and the Class Members' damages were caused by the same practice or course of conduct – that is, Defendant's unlawful failure to make primary payments for its insureds' accident-related medical expenses, or to reimburse Plaintiff and Class Members for the conditional payments made for those medical expenses.

55.     Plaintiff's and the Class Members' claims raise common questions of law and fact, including, but not limited to, whether:

     a.  Plaintiff's and the Class Members' (or their assigns') Enrollees incurred accident-related medical expenses while insured by no-fault auto insurance policies issued by Defendant;

     b.  Defendant is the primary payer responsible to make primary payments for the Enrollees' accident-related medical expenses under its contractual obligations, federal law, or Florida law;

     c.  Plaintiff and the Class Members (or their assigns) made conditional payments for accident-related medical expenses for which Defendant, as the Enrollees' no-fault insurance carrier, was responsible to make primary payments;

     d.  Defendant, under its contractual and statutory obligations as the Enrollees' no-fault

auto insurer, is required to reimburse Plaintiff and the Class Members for their (or their assigns') conditional payments for Enrollees' accident-related medical expenses;

e.  Whether any rights Defendant had to contest the amount of conditional payments expired due to failure to exhaust the applicable administrative appellate channels;

f.  Plaintiff and the Class Members have damages resulting from Defendant's failure to reimburse them for conditional payments of the Enrollees' accident-related medical expenses; and

g.  Plaintiff and the Class Members may recover damages for the Enrollees' accident-related medical expenses under the MSP Act, and such other or further relief as the law provides.

(C)  *Typicality*

56.    Plaintiff's claims are typical of the claims of the Class because they are based on the same legal theory, arise from the similarity, uniformity, and common purpose of Defendant's unlawful conduct, and are not subject to any unique defenses. Members of the Class have sustained, and will continue to sustain, damages in the same manner as Plaintiff as a result Defendant's wrongful conduct.

57.    Plaintiff's claims are typical of the Class Members' claims because Defendant failed to make primary payments for Enrollees' accident-related medical expenses, which it was obligated to do under the no-fault insurance policies it issued to the Enrollees, Florida law, and federal law.

58.    Plaintiff's claims are typical because they, like the Class Members, have a right to relief for Defendant's failure to make primary payments, or reimburse Plaintiff and Class Members for conditional payments of the Enrollees' accident-related medical expenses.

59.    Defendant's business practices, acts, and omissions are materially the same with

respect to Plaintiff's and the Class Members' claims, as will be Defendant's legal defenses.

### (D) Adequacy of Representation

60.     Plaintiff's and its attorneys will fairly and adequately protect and represent the interests of Class Members.

61.     Plaintiff is a member of the Class defined above. As the representative Plaintiff, MSPRC is committed to the active and vigorous prosecution of this action and have retained competent counsel experienced in litigation of this nature. In fact, two courts have already concluded that Plaintiff's counsel is "willing and able to take an active role as class representative and advocate on behalf of all class members." *MSPA Claims 1, LLC v. Ocean Harbor Ca. Ins.*, 2017 WL 477124 (Fla. 11th Cir. Ct. 2017); *MSPA Claims 1, LLC v. IDS Prop. Cas. Ins. Co.*, Case No. 15-27940-CA-21, slip op. at 7-8 (Fla. 11th Cir. Ct. Apr. 20, 2017).

62.     There is no hostility of interests between Plaintiff and the other Class Members. Plaintiff has no claims that are antagonistic to the claims of the Class Members and anticipate no difficulty in the management of this litigation as a class action.

63.     Plaintiff's counsel has the experience, resources, and commitment to vigorously prosecute this case to a successful resolution.

## II.    Fla. R. Civ. P. 1.220(b)

64.     In addition to satisfying Fla. R. Civ. P. 1.220(a), a class action must satisfy one of the provisions of Rule 1.220(b). This class action is maintainable under Rule 1.220(b)(3).

### (A) Predominance

65.     In this case, common liability issues of law and fact predominate over any hypothetical or potential individualized issues.

66.     Plaintiff's and the Class Members' claims arise from a common nucleus of operative fact and share, among other things, the common issues of law and fact set forth above. The overarching and predominating common issue in this action is whether Defendant failed to make primary payments, or reimburse Plaintiff and Class Members for conditional payments, for the accident-related medical expenses of Defendant's insureds who also were Enrollees of MAOs operated by Class Members (or their assigns), in violation of their legal obligations.

67.     Plaintiff maintains a reasonable methodology for generalized proof of class-wide impact, using a software system (the "MSP System") designed and developed by Plaintiff. The MSP System captures, compiles, synthesizes, and analyzes large amounts of data to identify claims for reimbursement of conditional payments. Plaintiff is capable of using the MSP System to identify and quantify Class Members' claims, as it has done for its own claims, and as two other courts have recognized as a viable method to prove damages in this case. E.g., *MSPA Claims 1, LLC v. Ocean Harbor Ca. Ins.*, 2017 WL 477124 (Fla. 11th Cir. Ct. 2017); *MSPA Claims 1, LLC v. IDS Prop. Cas. Ins. Co.*, Case No. 15-27940-CA-21, slip op. at 7-8 (Fla. 11th Cir. Ct. Apr. 20, 2017).

### (B) Superiority

68.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation because a class action is the most manageable and efficient way to resolve the individual claims of each Class Member.

69.     Specifically, a class action is the superior method of adjudicating Plaintiff's and the Class Members' claims because it will provide Class Members with what may be their only economically viable remedy, in view of the efficiency of the MSP System in identifying claims

for reimbursement of conditional payments. What's more, there are no known Class Members who are interested in individually controlling the prosecution of separate actions. In addition, a class action will concentrate all litigation in one forum, which will conserve judicial and party resources with no unusual manageability problems, because issues regarding Defendant's liability and the nature of Class Members' damages will be determined by class-wide proof, while the amounts of Class Members' damages will be determined by class-wide methods of data processing and computation. Finally, there are no known Class Members who are interested in individually controlling the prosecution of separate actions.

## CAUSE OF ACTION

70.     Plaintiff's claims result from Defendant's failure to pay or reimburse Medicare payments which are secondary, as a matter of law, and must be reimbursed if a primary payer is available.  Defendant issues no-fault insurance policies and is thus a primary payer liable under the MSP Law.

## COUNT I
## Direct Right of Recovery Pursuant to 42 C.F.R. § 411.24(e) for Breach of Contract

71.     Plaintiff incorporates by reference paragraphs 1-71 of this Complaint.

72.     Plaintiff's assignors are subrogated the right to recover primary payment from Defendant for the Defendant's breach of contract with their insured, pursuant to the MSP Law. Specifically, Defendant was contractually obligated to pay for medical expenses and items arising out of an accident, and Defendant failed to meet that obligation.  This obligation was, instead, fulfilled by the Plaintiff and other Class Members.  Under the MSP provisions, Plaintiff is permitted to subrogate the enrollee/insured's right of action against the Defendant. *See* 42 C.F.R.

§ 411.26.

73.    Plaintiff complied with any conditions precedent to the institution of this action, to the extent applicable.

74.    Defendant failed and/or refused to make complete payments of the Enrollees' accident-related expenses as required by its contractual obligations.

75.    Defendant failed to pay each enrollee's covered losses, and Defendant had no reasonable proof to establish that it was not responsible for the payment.

76.    Defendant's failure to pay the medical services and/or items damaged Plaintiff and the Class Members as set forth herein.   Plaintiff and the Class Members processed medical expenses and are entitled to recover up to the statutory policy limits for each enrollee's medical expenses related to the subject accidents, pursuant to their agreements with CMS and the provider of services.

**JURY TRIAL DEMAND**

77.    Plaintiff demands a trial by jury on all of the triable issues within this pleading.

**PRAYER FOR RELIEF**

78.    WHEREFORE, Plaintiff, individually and on behalf of the Class Members described herein, pray for the following relief:

   a.   find that this action satisfies the prerequisites for maintenance of a class action pursuant to Florida Rules of Civil Procedure 1.220(a) and (b)(3), and certify the Class;

   b.   designate Plaintiff as representative for the Class and Plaintiff's undersigned counsel as Class Counsel for the Class; and

   c.   issue a judgment against Defendant that:

i.      grants Plaintiff and the Class Members a reimbursement of damages for those moneys the Class is entitled to pursuant to their direct right of recovery for breach of contract within Count I;

ii.     grants Plaintiff and the Class Members pre-judgment and post-judgment interest consistent with the statute; and

iii.    grants Plaintiff and the Class Members such other and further relief as the Court deems just and proper under the circumstances.

Dated: July 19, 2018.          Respectfully submitted,

**MSP RECOVERY LAW FIRM**
*Counsel for Plaintiff*
5000 SW 75 Avenue, Suite 300
Miami, Florida 33155
Phone: (305) 614-2222
Email:     gmoreno@msprecovery.com
          serve@msprecovery.com

**ARMAS BERTRAN PIERI**
*Counsel for Plaintiff*
4960 SW 72nd Avenue
Miami, Florida 33155
Telephone: (305) 461-5100

By: */s/ Francesco Zincone*
Francesco Zincone, Esq., Fla. Bar No. 100096
J. Alfredo Armas, Esq., Fla. Bar No. 360708
Eduardo E. Bertran, Esq., Fla. Bar No. 94087
Natalia Marrero, Esq., Fla. Bar No. 127583

Email:     alfred@armaslaw.com
          ebertran@armaslaw.com
          nmarrero@armaslaw.com
          barbi@armaslaw.com
          fzincone@armaslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served electronically using the CM/ECF filing system on July 19, 2018 on all counsel or parties of record on the Service List below.

*/s/ Francesco Zincone*

## SERVICE LIST

**Stacy J. Rodriguez, Esq.**
**Valerie B. Greenberg, Esq.**
**Ari Gerstin, Esq.**
**Jeffrey Benjamin Pertnoy, Esq.**
**Jonathan Dov Lamet, Esq.**
*Counsel for Defendant*
AKERMAN, LLP
Three Brickell City Centre
98 Southeast Seventh Street, Ste. 1100
Miami, FL 33131
Telephone:      (305) 374-5600
Fax:               (305) 374-5095
Email:            stacy.rodriguez@akerman.com
                     valerie.greenberg@akerman.com
                     ari.gerstin@akerman.com
                     jeffrey.pertnoy@akerman.com
                     jonathan.lamet@akerman.com